IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISHMAEL A. BURK,<br>    *Plaintiff*, | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO. 21-CV-3969 |
| KENNETH M EASON, *et al.*,<br>    *Defendants*. | : <br> : | |

<u>MEMORANDUM</u>

PAPPERT, J.                                                                                                  SEPTEMBER 15, 2021

Ishmael A. Burk, a prisoner incarcerated at SCI-Chester ("SCIC"), filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are SCIC Superintendent Kenneth M Eason, Records Supervisor Latoria Johnson, Counselor Wanda Mansun-Johnson,[1] and Coordinator Mark Wahl. All Defendants are named in their official capacities only. Burk also seeks leave to proceed *in forma pauperis* and has submitted his institutional account statement. For the reasons that follow, the Court will grant the application to proceed *in forma pauperis*, dismiss certain claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and permit other claims to proceed. Burk will be granted leave to file an amended complaint.

I

Burk's Complaint is brief. He alleges constitutional claims for "racial discrimination and segregation by prison authorities." (ECF No. 1 at 3.)[2] He asserts

---

[1] Mansun-Johnson's name is not spelled consistently in the Complaint. The Court will use the spelling Burk used in the list of Defendants contained in the Complaint.

[2] The Court adopts the pagination supplied by the ECF/CM docketing system.

Eason, Johnson, Mansun-Johnson, and Wahl prevent African-American prisoners from entering a drug treatment program in Pennsylvania. (*Id.* at 12.) He also alleges Wahl violated his Eighth Amendment rights by "taking away my State browns."[3] (*Id.*) He wrote to Mansun-Johnson asking to be placed in the drug program, but she never responded to him. (*Id.* at 13.) He then wrote to Wahl who allegedly responded that "only White inmates can be entered into this program." (*Id.*) Burk encountered Eason on January 10, 2021 and told him of the information he received from Wahl. Eason allegedly told Burk to write to Johnson, the SCIC records supervisor. (*Id.*) When he did so, Johnson responded that "only White inmate [sic] can be entered into the state Drug Program and that it would be a waste of time to enter my name." (*Id.*) Burk filed a grievance over the issue and received a response that he did not qualify for the program "because of the color of my skin and that my grievance was denied." (*Id.*) An appeal of that decision was also denied. (*Id.*) On February 15, 2021, Burk spoke to Mansun-Johnson to tell her about his concern about racism within SCIC, his drug problem, and how the problem was not being addressed properly. (*Id.*) She allegedly told him "she did not care because I wrote a grievance on her and that it was my fault." (*Id.*)

On February 18, 2021, when Eason and Wahl were doing rounds on Burk's cell block, he spoke to both about how he was eligible for the drug program but was denied due to his race. (*Id.* at 13-14.) They again allegedly told him that the drug program was only available to White inmates. (*Id.* at 14.) He wrote another grievance about the issue and Mansun-Johnson called him to her office and ripped up his grievance, telling

---

[3] The meaning of Burk's reference to "State browns" is unclear.

Burk to "stop writing about the State Drug Program." (*Id*.) He alleges that since filing the grievance, his "state browns have been ripped along with my boxers (underwear). (*Id*. (parenthetical in original).) As relief on his claims, Burk seeks to be entered into the drug program and demands $50,000 in money damages. (*Id*. at 5.)

II

Because Burk appears unable to pay the full amount of the filing fee in advance, the Court will granted him leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Burk is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[4] Because he is a prisoner, Burk will be required to pay the full amount of the filing fee in installments, as required by the Prison Litigation Reform Act.

"This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### III

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A

Burk has named each Defendant, all of whom are employees of the Commonwealth of Pennsylvania, in their official capacities only and seeks money damages as part of his relief. The claims for money damages asserted against Commonwealth officials in their official capacities may not proceed. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits

against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.[5]

B

Burk also seeks admission into the drug program. The Court understands this to be a request for prospective injunctive relief. Commonwealth officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Courts reason that injunctions against state officials actively violating federal laws are "'necessary to vindicate the federal interest in assuring the supremacy of that law,'" despite the Constitution's prohibition against suits against the state. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In *Koslow*, the Third Circuit held that because "the Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for

---

[5] Burk may not understand that by checking the box on the form Complaint indicating "official capacity," he could not obtain monetary relief. Because the Court cannot say at this time that Burk can never assert plausible claims for money damages against the Defendants in their individual capacities, the Order that follows will give Burk the option of amending his claims or pursuing only his official capacity claims for prospective injunctive relief.

violations of federal law," a plaintiff may sue a state official for ongoing violations of the Americans with Disabilities Act. *Id.* at 178.

To avoid the Eleventh Amendment bar, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted).

While expressing no opinion on the merits of Burk's allegation that he was denied entry into the drug program based on his race, the Court finds the allegations assert a plausible claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City*

*of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)). Burk's claim that he was denied entry into the drug program based on his race merits a response.

### IV

For the reasons stated, Burk's claim for money damages against the Defendants on his official capacity claim will be dismissed. He will be granted leave to file an amended complaint in the event he can allege plausible claims for money damages against the Defendants in their individual capacities. The Court is prepared to direct service of the Complaint on Burk's claim for prospective injunctive relief. Burk may notify the Court that he wishes to proceed on this claim only. If Burk chooses not to file an amended complaint, the Court will direct service on Burk's claim for prospective injunctive relief on all Defendants for a responsive pleading. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**